UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SHELLIE BRAGDON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-323-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FANEUIL, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Shellie Bragdon filed this Kentucky Civil Rights Act employment discrimination action in the Fayette Circuit Court on November 22, 2021. [Record No. 1-1] Bragdon's Complaint alleges that she worked as a customer service representative for Defendant Faneuil, Inc., from December 2020 to September 2021, earning $12.50 per hour. [*Id.* at p. 2, ¶ 6.] The plaintiff claims that Faneuil discriminated against her based on her diabetes disability and that she was fired in retaliation for seeking accommodations. [*Id.* at pp. 2-3, ¶¶ 7-14.]

The Complaint's prayer for relief specifically seeks: (1) compensatory damages, including past and future lost wages and benefits, as well as damages for emotional distress, mental anguish, humiliation, and embarrassment; (2) punitive damages; (3) statutory attorney's fees, costs, and expenses; and (4) interest on all damage awards, verdicts, or judgments. [*Id.* at p. 3.] Bragdon also alleges that her claims are worth "less than $75,000 inclusive of fees, punitive damages and the fair value of any injunctive relief." [*Id.* at p. 2, ¶ 4.]

- 1 -

The defendant removed the case on December 27, 2021, asserting diversity of citizenship jurisdiction.  [Record No. 1]  There is little question that complete diversity exists for the purposes of 28 U.S.C. § 1332(a)(1), with the plaintiff being a citizen of Kentucky and the defendant being a citizen of Delaware and Virginia.  [*Id.* at p. 2, ¶¶ 5-6.]  However, the Bragdon has filed a motion to remand, arguing that her claims do not meet the amount in controversy prescribed by § 1332(a) and attaching a stipulation signed by counsel that reads, in substantive part:

> 1.  The amount in controversy in connection with Plaintiff's claims asserted in this case is less than seventy-five thousand dollars ($75,000), inclusive of past and future lost wages and benefits; compensatory damages for emotional distress, mental anguish, humiliation, and embarrassment; punitive damages; costs; attorney's fees; and the fair market value of any injunctive relief; and Plaintiff will neither seek nor accept any amount equal to or greater than seventy-five thousand dollars ($75,000), inclusive of past and future lost wages and benefits; compensatory damages for emotional distress, mental anguish, humiliation, and embarrassment; punitive damages; costs; attorney's fees; and the fair market value of any injunctive relief.
>
> 2.  This stipulation is intended to be unequivocal and binding on Plaintiff, and it is Plaintiff's intention that this Stipulation be used by the Court to limit the amount of any award to Plaintiff.  The Plaintiff agrees that Plaintiff cannot revoke or amend this stipulation.  This stipulation expressly forecloses any possibility of Plaintiff receiving or accepting damages in excess of $75,000.

[Record Nos. 5 and 5-1]

Faneuil responds by asserting that the amount in controversy requirement is easily satisfied in this case, arguing that $235,500.00 is a conservative estimate of the total relief sought by the plaintiff.  [Record No. 8, pp. 1-4]  It also argues that the Court should not apply a line of unpublished cases from the United States Court of Appeals for the Sixth Circuit endorsing post-removal stipulations because they are contrary to a published Sixth Circuit case, *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000), which prohibits plaintiffs

from filing post-removal stipulations reducing the amount in controversy to defeat federal jurisdiction. [*Id.* at pp. 6-8.]  Bragdon has not filed a reply within the time provided by the Local Rules.

A defendant removing a case on diversity jurisdiction grounds must satisfy the amount in controversy requirement of § 1332(a).  *See* 28 U.S.C. § 1446(c)(2)(B).  Under § 1332(a), the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs."  A removing defendant bears the burden of demonstrating that the amount in controversy exceeds this threshold by a preponderance of the evidence.  *See*, *e.g.*, *Tankersley v. Martinrea Heavy Stampings, Inc.*, 33 F. Supp. 3d 775, 778 (E.D. Ky. 2014).

A statement in a Kentucky state court complaint indicating that the amount in controversy is less than $75,000.00, such as that alleged in paragraph 4 of the Complaint, "is insufficient to affirmatively establish that the amount in controversy requirement for diversity jurisdiction cannot be met."  *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 470 (6th Cir. 2019) (citations omitted).  Further, the "determination of federal jurisdiction in a diversity case is made as of the time of removal."  *Rogers*, 230 F.3d at 871 (citing *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996)).  Thus, "a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court."  *Id.* at 872.

However, some states, like Kentucky, do not permit plaintiffs to demand a specific sum for relief in their complaints.  *See* Ky. R. Civ. P. 8.01(2) ("In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court . . . .").  Where this is the case, a plaintiff may file an

effective post-removal stipulation if that stipulation "provides specific information about the amount in controversy for the first time." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 481 (6th Cir. 2014) (quoting *Egan v. Premier Scales & Sys.*, 237 F. Supp. 2d 774, 778 (W.D. Ky. 2002)).  Such a stipulation must also "unequivocally limit damages so as to actually bind the parties." *Knies v. Grayhawk, LLC*, No. 5:21-030-DCR, 2021 WL 982620, at *2 (E.D. Ky. Mar. 16, 2021) (citing *Shupe*, 566 F. App'x at 481).  This is not necessarily inconsistent with the rule in *Rogers* because such a stipulation has the effect of clarifying that the amount in controversy is not met, rather than reducing the relief sought.  *See Heyman*, 781 F. App'x at 469-70.  Thus, although "events occurring after removal that reduce the amount in controversy do not oust jurisdiction," *Rogers*, 230 F.3d at 872, such an event does not occur if a post-removal stipulation merely clarifies that the amount in controversy is not met.

But the foregoing does not mean that any Kentucky plaintiff whose case has been removed can achieve remand by simply executing a post-removal stipulation that states an unequivocal desire to be bound to a recovery below the amount in controversy threshold.  The problem plaintiffs often face is that their post-removal stipulations would, if given effect, actually function to reduce the amount in controversy by "walking back" the demands for relief pleaded in their complaints to fall below the jurisdictional threshold.  *See, e.g.*, *Knies*, 2021 WL 982620, at *2; *Cox v. CTA Acoustics, Inc.*, No. 6:18-CV-114-CHB, 2018 WL 4119929, at *3 (E.D. Ky. Aug. 29, 2018).  Such stipulations, of course, run afoul of the rule in *Rogers*.

The critical question here is whether Bragdon has already ostensibly pleaded specific information indicating that the amount in controversy requirement has been met, rendering the post-removal stipulation an ineffective attempt to reduce the amount in controversy.  The Complaint alleges that Bragdon earned $12.50 per hour prior to her termination and demands,

among other things: (1) past and future lost wages; (2) past and future lost benefits; (3) emotional distress, mental anguish, humiliation, and embarrassment damages; and (4) attorney's fees.  These types of relief are compensable under the Kentucky Civil Rights Act and count toward the amount in controversy.  *See Shupe*, 566 F. App'x at 478-79.

Assuming Bragdon was terminated on September 30, 2021,[1] and this case goes to trial one year from today,[2] sixty-nine weeks will have elapsed between the date of termination and trial.  And assuming she seeks past lost wages based on a forty-hour work week at a rate of $12.50 per hour, past lost wages would reasonably amount to $34,500.00 by the time of trial.  *See Shupe*, 566 F. App'x at 479 ("It is appropriate to consider back pay beyond the time of removal when a plaintiff seeks an award for back pay that includes future accruals.").  Further, the defendant asserts that the Court should conservatively account for recovery of one year of future lost wages after trial, which would total $26,000.00.  [Record No. 8, pp. 2-3]  Thus, a reasonable estimate of the wages sought totals $60,500.00.

Faneuil also cites June 2021 United States Bureau of Labor Statistics data to estimate the value of Bragdon's demand for lost benefits.  [*See id.* at p. 3.]  More recent data from a September 2021 Employer Costs for Employee Compensation Summary, which was reissued in December 2021, indicate that benefits from private industry employers like Faneuil equate, on average, to forty-one percent of wages and salaries paid to their workers.  *See* U.S. BUR. OF LABOR STATISTICS, EMPLOYER COSTS FOR EMPLOYEE COMPENSATION SUMMARY (Dec. 16, 2021),  https://www.bls.gov/news.release/ecec.nr0.htm  (last accessed January 25, 2022).

---

[1]  The Complaint does not provide the specific date on which Faneuil terminated Bragdon in September 2021.

[2]  The Court has not yet entered a Scheduling Order.

Forty-one percent of $60,500.00 is $24,805.00, which would satisfy the amount in controversy when aggregated with the wages reasonably sought.

Additionally, Faneuil posits that plaintiff could obtain upwards of $1,000,000.00 in damages for emotional distress, mental anguish, humiliation, and embarrassment, consistent with a 2018 judgment in a disability-related wrongful termination action in Jefferson Circuit Court.  [Record No. 8, pp. 3-4 (citing *Turner v. Norton Healthcare, Inc.*, Case No. 11-CI-006125 (Jefferson Cir. Ct., May 11, 2018).]  Nonetheless, the defendant argues that the Court should account for $100,000.00, *i.e.*, 1/10 of the amount recovered in *Turner*.  [*Id.* at p. 4.]  The defendant also notes that attorney's fees could rise to fifty percent of damages recovered in this action but suggests that the Court account for $50,000.00.  [*Id.*]

Specific estimates of emotional distress, mental anguish, humiliation, and embarrassment damages, as well as attorney's fees, are difficult to ascertain based on the information available at this stage in the litigation.  Suffice it to say that these damages and fees would each likely add tens of thousands of dollars to a sum that has already eclipsed $75,000.00.

Faneuil's $235,500.00 valuation may be somewhat excessive.  However, the defendant has demonstrated by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  And because the Complaint has already pleaded sufficiently specific information to indicate that the amount in controversy requirement is met, *Rogers* applies, and the Court does not give effect to the stipulation filed in connection with the motion to remand.

Based on the foregoing, it is hereby

**ORDERED** that Plaintiff Shellie Bragdon's motion to remand [Record No. 5] is **DENIED**.

Dated: January 26, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky